UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────

DAMILOLA ANIMASHAUN,

                                    Plaintiff,              9:19-CV-0820
                                                            (LEK/DJS)

            v.

BRIAN FISCHER, et al.,

                                    Defendants.
─────────────────────────────

APPEARANCES:

DAMILOLA ANIMASHAUN
Plaintiff, pro se
389078
Baltimore County Detention Center
720 Bosley Avenue
Towson, MD 21204


LAWRENCE E. KAHN
Senior United States District Judge


**DECISION AND ORDER**

## I.      INTRODUCTION

        The Clerk has sent to the Court for review an amended complaint submitted by pro se

plaintiff Damilola Animashaun asserting claims pursuant to 42 U.S.C. § 1983 ("Section

1983").  By Decision and Order filed on October 24, 2019, this Court reviewed the complaint

in accordance with 28 U.S.C. § 1915A(b), and found that it was subject to dismissal for

failure to state a claim upon which relief may be granted.  Dkt. No. 9 ("October 2019 Order").[1]

───────────────────────

        [1]  Because plaintiff paid the filing fee for this action, the Court also struck the inmate authorization form
filed by plaintiff.  *See* October 2019 Order at 1, 14-15.

In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint. *Id*. at 14-16.

Presently before the Court is plaintiff's amended complaint and letter request to update the amended complaint to name three additional individuals, each referenced in the amended complaint, as defendants. Dkt. No. 12 ("Am. Compl.");[2] Dkt. No. 13 ("Letter Request").

## II. SUFFICIENCY OF THE AMENDED COMPLAINT

### A. The Complaint and October 2019 Order

In his original complaint, plaintiff asserted claims against the following individuals related to his confinement in a special housing unit ("SHU") at various correctional facilities beginning on August 18, 2016: (1) former DOCCS Commissioner Brian Fischer; (2) current DOCCS Commissioner Anthony J. Annucci; (3) "John Doe(s)"; (4) "Jane Doe(s)"; and (5) Elmira Correctional Facility Corrections Sergeant John Doe. *See generally*, Compl. The complaint was construed to assert Eighth Amendment claims against the named defendants. *See* October 2019 Order at 8.

Following review of the complaint pursuant to 28 U.S.C. § 1915A(b), plaintiff's Section 1983 claims were dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* October 2019 Order at 10-16.

### B. Review of the Amended Complaint

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more

---

[2] Plaintiff's amended complaint is comprised of a document entitled "Amendment of Complaint per 10/24/2019 Court Order of the United States District Court Northern District of New York (U.S. District Judge Lawrence E. Kahn)" and a document entitled "Affidavit in Support of Claims in Damilola Animashaun vs Brian Fischer et al." Page citations to the amended complaint refer to the page numbers electronically generated by the Court's electronic filing system, CM/ECF.

government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915A(b). The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) was discussed at length in the October 2019 Order and it will not be restated in this Decision and Order. *See* October 2019 Order at 1-2.

Plaintiff's amended complaint contains allegations similar to those set forth in the original complaint, but names certain individuals as defendants in place of the "John Doe(s)" and "Jane Does(s)," provides more detail regarding certain events that gave rise to his SHU confinement, and asserts new constitutional claims in addition to re-asserting Eighth Amendment claims based on his SHU confinement. *See generally*, Am. Compl. The following facts are set forth as alleged by plaintiff in his amended complaint, and as supplemented by his Letter Request.[3]

### 1. 2016 Incidents at Auburn Correctional Facility Giving Rise to SHU Confinement

On or about August 18, 2016, a corrections official at Auburn Correctional Facility "spat on [plaintiff] multiple times then threw an unknown green liquid substance on [plaintiff,] which caused [him] severe physical injuries[.]" Am. Compl. at 19. The corrections officer then issued plaintiff a "'cover up' ticket" that "wrongly accused [plaintiff of] disobeying the direct orders of an officer" and "falsely" accused him of "squeez[ing] the contents [of a lotion bottle]" on that officer. *Id*. at 18-19.

Following this incident, plaintiff was placed in SHU. Am. Compl. at 18. The next day,

---

[3] The amended complaint also makes reference to the exhibits attached to the original complaint (Dkt. No. 1-1) and supplemental submission in support of the original complaint (Dkt. No. 6-1), and requests that those exhibits be considered and filed with the amended complaint. Am. Compl. at 1, 17. The Court has considered those exhibits as part of its review of the amended complaint in accordance with 28 U.S.C. § 1915A. The Clerk is directed to attach a copy of those exhibits (Dkt. No. 1-1; Dkt. No. 6-1) to the amended complaint.

defendant Corrections Officer John Doe refused to accept a grievance from plaintiff regarding the events of August 18, 2016. *Id.* at 2.

Thereafter, plaintiff attended a disciplinary hearing arising out of the misbehavior report he received. Am. Compl. at 9.[4] At the conclusion of the disciplinary hearing, defendant Hearing Officer Morgavero sentenced plaintiff to six months of SHU confinement, revoked certain of his privileges, and imposed a $5.00 fine. *Id.*[5] On or around this date, plaintiff was also sentenced to an additional 90 days of SHU confinement and 30 days of keeplock confinement for one or more other disciplinary infractions. *Id.* at 23.[6]

### 2. 2016 and 2017 Incidents at Southport Correctional Facility Giving Rise to SHU Confinement

On October 1, 2016, plaintiff was transferred to Southport Correctional Facility. Am. Compl. at 20. During his time at this facility, he received "multiple additional infractions[,]" which resulted in him receiving disciplinary sentences that included 8 months of SHU confinement and 30 days of keeplock confinement. *Id.*[7]

---

[4] Apparently after the events of August 18, 2016, and while plaintiff was awaiting his disciplinary hearing, he received two other disciplinary infractions. *See* Am. Compl. at 23.

[5] Although the amended complaint does not name Hearing Officer Morgavero as a defendant, plaintiff's Letter Request seeks to modify the amended complaint to do so. *See* Letter Request at 1. The Letter Request also states that this individual was "the hearing officer whom [sic] conducted the Elmira Correction[al] Facility disciplinary hearing" arising out of charges that plaintiff lied to a corrections official at that facility regarding his possession of an identification card. *Id.*

[6] The amended complaint lacks any allegations explaining when plaintiff received these other disciplinary charges, what he was charged with, when he received a disciplinary hearing for these charges, or who acted as the hearing officer.

[7] Plaintiff alleges that the incidents giving rise to the disciplinary infractions occurred in October 2016, December 2016, and February 2017. Am. Compl. at 37. The amended complaint, however, lacks any allegations explaining what plaintiff was charged with, when he received disciplinary hearings for these charges, or who acted as the hearing officer at the hearings. The amended complaint also lacks any allegation that any hearing officer who imposed a sentence resulting in some portion of the additional 8 months of SHU confinement and 30 days of keeplock was aware of plaintiff's mental health issues, or how much additional SHU confinement plaintiff already faced as a result of the disciplinary sentence(s) issued based on earlier events.

4

### 3. 2017 Incidents at Elmira Correctional Facility Giving Rise to SHU Confinement

In or around April, 2017, plaintiff was transferred to Elmira Correctional Facility "to serve the 30 days keeplock sanction." Am. Compl. at 20-21. On or about May 27, 2017, plaintiff informed an unidentified corrections officer that he intended to take his own life and showed the officer a weapon he created and intended to use. *Id.* at 25; Dkt. No. 1-1 at 18. Plaintiff was then escorted to the mental health clinic and placed on suicide watch. Am. Compl. at 25.

On or about May 30, 2017, plaintiff made a request to defendant John Doe Corrections Sergeant that he be placed in protective custody. Am. Compl. at 16; Dkt. No. 1-1 at 22. Plaintiff told Corrections Sergeant John Doe that he was "in fear for imminent danger pose[d] . . . to [him] by [an inmate] porter Kendall Jones[.]" Am. Compl. at 16. Plaintiff stated that inmate Jones advised plaintiff that he intended to harm him. *Id.* Corrections Sergeant John Doe denied plaintiff's request for protective custody. *Id.* at 16, 26.

Thereafter, plaintiff was released from suicide watch and returned to his cell. Am. Compl. at 25-26. A few days later, and just three days prior to the completion of plaintiff's keeplock sentence, he was involved in an altercation with inmate Kendall. *Id.* Around this time, plaintiff also received a separate disciplinary charge for lying to a corrections officer about his possession of an identification card. *Id.* at 10-11, 37. As a result of the altercation, plaintiff received a misbehavior report, was subsequently found guilty of the charges after a disciplinary hearing, and sentenced to six months of SHU confinement. *Id.* at 21, 37.[8]

---

[8] Plaintiff alleges that he received a separate hearing for the disciplinary charge of lying to the corrections official, and received a $5.00 fine at the conclusion of that hearing. Am. Compl. at 10-12. It is unclear whether plaintiff received any additional punishment as a result of this disciplinary charge.

#### 4. 2017 Incidents at Southport Correctional Facility Giving Rise to SHU Confinement

On or about June 11, 2017, plaintiff was transferred back to Southport Correctional Facility. Am. Compl. at 27. During plaintiff's confinement at this facility, he was involved in at least four separate incidents that resulted in disciplinary charges against him. *Id.* at 37-38. One of those incidents involved plaintiff's refusal to return a food tray; another involved "lewd conduct." *Id.* at 38. It appears plaintiff may have also been involved in an altercation with an inmate. *Id.* at 30.[9]

#### 5. 2018 Incidents at Downstate Correctional Facility Giving Rise to SHU Confinement

In or around March, 2018, plaintiff was transferred to Downstate Correctional Facility. Am. Compl. at 8. While plaintiff was on the transport bus, he was involved in an altercation with another inmate. *Id.* at 8, 38. As a result of the altercation, plaintiff received a misbehavior report, was subsequently found guilty of the charge(s) after a disciplinary hearing, and sentenced to an unidentified amount of SHU confinement. *Id.*[10]

#### 6. 2018 Incidents at Upstate Correctional Facility Giving Rise to SHU Confinement

On or about March 23, 2018, plaintiff was transferred to Upstate Correctional Facility. Am. Compl. at 8, 12. Shortly after plaintiff's transfer, he was involved in an altercation with his assigned cell mate. *Id.* at 12, 30, 38. Thereafter, plaintiff was involved in another

---

[9]  The amended complaint lacks any allegations explaining who acted as the hearing officer(s) for these disciplinary charges, or the amount of SHU confinement, if any, plaintiff received as a result of these disciplinary charges. The amended complaint also lacks any allegation that the hearing officer(s) who imposed the disciplinary sentence(s) were aware of plaintiff's mental health issues, or how much additional SHU confinement plaintiff already faced as a result of prior disciplinary sentences.

[10]  Plaintiff alleges that he was involved in two incidents at Downstate Correctional Facility that resulted in two separate disciplinary hearings. Am. Compl. at 8. The amended complaint, however, fails to identify the charge(s) that gave rise to the other disciplinary hearing, or the outcome of that hearing.

altercation with a different assigned cell mate. *Id.* at 12, 30. At other unidentified times during plaintiff's confinement at Upstate Correctional Facility, he apparently also received disciplinary infractions for requesting sexual favors from a nurse and engaging in a lewd act. *Id.* at 12-13.

In total, plaintiff received disciplinary charges for five different incidents that occurred during his confinement at Upstate Correctional Facility.[11] Am. Compl. at 8, 12-13, 38. Defendant Hearing Officer Cantwell presided over one or more of the disciplinary hearings arising out of these disciplinary charges. *Id.* at 8, 12. Plaintiff was apparently found guilty of the various disciplinary charges during separate disciplinary hearings, and sentenced to an unidentified amount of additional SHU confinement. *Id.*[12]

### 7. 2018 Incidents at Clinton Correctional Facility Giving Rise to SHU Confinement

On August 31, 2018, plaintiff was transferred to Clinton Correctional Facility for better mental health treatment. Am. Compl. at 21, 31. While plaintiff was in a van en route to Clinton Correctional Facility, he was involved in an altercation with one of the prison transport officers, which resulted in disciplinary charges against him. *Id.* at 31, 36.

Shortly after plaintiff's arrival, he received a daily prescription for 15 milligrams of Remeron to treat his depression and stress. *Id.* at 14, 21, 29, 32. A short time later, the dosage was increased to 30 milligrams, and plaintiff also received a daily prescription for 50 milligrams of Vistaril to treat his insomnia, stress, anxiety, and delusional state. *Id.* at 14.

---

[11] The amended complaint lacks any allegations regarding a fifth incident.

[12] The amended complaint lacks any allegations indicating the amount of SHU confinement imposed on plaintiff after any of the these disciplinary hearings. The amended complaint also lacks any allegation that the hearing officer(s) who imposed the disciplinary sentence(s) were aware of plaintiff's mental health issues, or how much additional SHU confinement plaintiff already faced as a result of prior disciplinary sentences.

Between September 24 and October 12, 2018, plaintiff received disciplinary charges for "spitting on an inmate[,] . . . not leaving the shower area when told to do so, . . . [and] lewd conduct."  Am. Compl. at 8.  Following each of the disciplinary charges against plaintiff during his confinement at Clinton Correctional Facility, he received a disciplinary hearing.  *Id.* at 8, 12-13.  Defendant Cantwell served as the hearing officer for one or more of these disciplinary hearings.  *Id.* at 13.  Apparently following each of the disciplinary hearings, plaintiff was sentenced to additional "SHU/keeplock" confinement "despite [his] claims of mental illnesses[.]"  *Id.* at 8, 14.[13]

### 8. 2019 Incidents at Attica Correctional Facility Giving Rise to SHU Confinement

On or about October 16, 2018, plaintiff was transferred to Attica Correctional Facility.  Am. Compl. at 21, 31-32.  In or around February, 2019, plaintiff received a misbehavior report charging him with lewd conduct, interference with staff, and disobeying a direct order.  *Id.* at 7.  On or about February 20, 2019, plaintiff's disciplinary hearing arising out of these charges commenced before defendant Hearing Officer Burns.  *Id.*  Defendant Burns found plaintiff guilty of the charges in the misbehavior report and sentenced him to an unidentified amount of additional confinement in SHU.  *Id.*[14]

### 9. 2019 Incidents at Mid-State Correctional Facility Giving Rise to SHU Confinement

On or about April 2, 2019, plaintiff was transferred to Mid-State Correctional Facility.

---

[13]  The amended complaint lacks any allegations indicating the amount of SHU confinement imposed on plaintiff after any of these disciplinary charges, or that defendant Cantwell was aware of how much additional SHU confinement plaintiff already faced as a result of prior disciplinary sentences.

[14]  The amended complaint lacks any allegations indicating the amount of SHU confinement imposed on plaintiff, or that defendant Burns was aware of plaintiff's mental health issues, or how much additional SHU confinement plaintiff already faced as a result of prior disciplinary sentences.

Am. Compl. at 22.  On July 7, 2019, defendant Corrections Officer Annarino issued plaintiff a "disciplinary infraction" falsely charging him with using inappropriate language directed at her. *Id.* at 3-4.  As a result of the disciplinary infraction, plaintiff was "placed on recreation deprivation" by defendant Corrections Sergeant Burns, which lasted approximately four (4) days.  *Id.* at 3; Letter Request at 1-2.[15]

On or about July 18, 2019, plaintiff's disciplinary hearing arising out of the disciplinary infraction issued by defendant Annarino commenced before defendant Corrections Lieutenant Klein.  Am. Compl. at 3.  Defendant Annarino testified during the hearing that plaintiff used the inappropriate language described in the disciplinary infraction.  *Id.* at 4. However, defendant Annarino was unable to identify any witness who could support her version of events.  *Id.*

Following defendant Annarino's testimony, plaintiff requested "audio/video" footage from the date of the charged incident to rebut defendant Annarino's testimony, and defendant Klein postponed the hearing to "determine if the audio was intelligible[.]"  Am. Compl. at 4.  Upon reconvening the disciplinary hearing, defendant Klein stated for the record that the "video part of the surveillance" from July 7, 2019, was "not working[.]"  *Id.* at 5.  Plaintiff then requested to call his "neighbors or the state actors known to walk the area of the incident" to rebut defendant Annarino's testimony.  *Id.*  Defendant Klein denied plaintiff's request and found him guilty of the charges in the disciplinary infraction.  *Id.*  Plaintiff's

---

[15]  Plaintiff's Letter Request clarifies plaintiff's desire to name Corrections Sergeant Burns as a defendant.  It is unclear whether this individual is the same individual with the last name "Burns" who presided over plaintiff's disciplinary hearing at Attica Correctional Facility.  However, because plaintiff named Hearing Officer Burns as a defendant in the "parties" section of the amended complaint, and sought to add Corrections Sergeant Burns as a defendant in his Letter Request, the Court assumes that there are two individuals with the last name "Burns" that plaintiff desires to name as defendants.

disciplinary sentence included revocation of his "phone incentive," a $5.00 fine, and 30 days of keeplock confinement. *Id.* at 5-6.

Following the disciplinary hearing, defendant Corrections Officer Riley relocated plaintiff's cell to a cell with a less preferable view, which adversely impacted plaintiff's mental state. *Id.* at 6-7; Letter Request at 1.[16]

In September, 2019, plaintiff's "progress into Phase 3 [of the] Step Down Program" was delayed by one week by "the counselors of the Step Down Program," defendants Diego, Loomis, Martin, Strajack, Fischer, "Ms. C" and "Ms. A." Am. Compl. at 6, 17. Because of the one-week delay in plaintiff's progression to Phase 3 of the Step Down program, plaintiff's access to commissary buy privileges was also delayed. *Id.* at 6.

On September 12, 2019, plaintiff was extradited to the Baltimore County Detention Center. Am. Compl. at 17. On October 27, 2019, plaintiff was placed in protective custody at that facility. *Id.*

### 10. Supervisory Officials

Both current DOCCS Commissioner Anthony Annucci and former DOCCS Commissioner Brian Fischer allowed plaintiff's "prohibited extensive SHU/keeplock confinement sentences" despite knowing that the Honorable Shira A. Scheindlin preliminarily approved a settlement agreement in *Peoples v. Fischer*, which prohibited "harsh and disproportionate" SHU sentences. Am. Compl. at 42-44.[17]

---

[16]  The Letter Request clarifies plaintiff's desire to name Corrections Officer Riley as the person allegedly responsible for plaintiff's cell relocation.

[17]  As noted in the October 2019 Order, in December, 2015, the Honorable Shira A. Scheindlin preliminarily approved a settlement agreement in the consolidated action, and conditionally certified a class of all inmates in DOCCS custody who were then serving, or would serve in the future, a disciplinary confinement sanction in a SHU. *See* October 2019 Order at 6-7 (citing *Peoples v. Fischer*, No. 11-CV-02694 (S.D.N.Y.), Dkt. Nos. 144, 329). On March 31, 2016, Judge Scheindlin granted the final joint motion for settlement approval, and

### 11.  Section 1983 Claims

Liberally construed, the amended complaint asserts the following Section 1983 claims against the defendants in their individual and official capacities: (1) a First Amendment free-flow-of-mail claim against defendant Corrections Officer John Doe from Auburn Correctional Facility; (2) Eighth Amendment conditions-of-confinement claims against defendants Annarino and Burns based on the revocation of plaintiff's recreation privileges; (3) an Eighth Amendment conditions-of-confinement claim against defendant Riley based on the relocation of plaintiff's cell; (4) Eighth Amendment conditions-of-confinement claims against defendants Morgavero, Cantwell, Klein, Hearing Officer Burns, Annucci, and Brian Fischer based on plaintiff's SHU confinement; (5) an Eighth Amendment failure-to-protect claim against defendant Corrections Sergeant John Doe from Elmira Correctional Facility; (6) Fourteenth Amendment due process claims against defendants Annarino and Corrections Sergeant Burns based on the revocation of plaintiff's recreation privileges; (7) a Fourteenth Amendment due process claim against defendants Diego, Loomis, Martin, Strajack, Fischer, "Ms. C" and "Ms. A" based on delaying plaintiff's progression through the "Step Down Program"; and (8) Fourteenth Amendment disciplinary due process claims against defendants Morgavero, Cantwell, Klein, and Hearing Officer Burns.

Plaintiff seeks monetary damages.  Am. Compl. at 17.  For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### C.  Severance and Transfer of Failure-to-Protect Claim

Rule 21 of the Federal Rules of Civil Procedure permits the Court to sever any claim

---

in doing so, approved the parties' settlement agreement.  *Id*. (citing *Peoples v. Fischer*, No. 11-CV-02694 (S.D.N.Y.), Dkt. No. 329).

against a party and proceed with that claim separately.  Fed. R. Civ. P. 21.  In deciding whether to sever a claim, the Court should consider the following:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).  "A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer.  Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants."  *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221, 225-26 (E.D.N.Y. 1986).  "A decision to sever lies within the discretion of the Court."  *Id.* at 225.

Here, plaintiff's failure-to-protect claim arising out of his confinement at Elmira Correctional Facility is more appropriately heard in the Western District of New York ("Western District"), where that facility is located.  The allegations pertaining to this claim involve a different defendant than the allegations pertaining to plaintiff's other claims, and the failure-to-protect claim is based on a discrete event, which bears no relationship to plaintiff's other claims or SHU confinement.  Thus, the witnesses and documentary proof will be distinct.  In addition, the Court is sensitive to the burden, upon both the individuals and the taxpayers of New York, of requiring individuals who are employed and most likely reside in the Western District to travel to the Northern District to defend against allegations that occurred in the Western District.

12

For the foregoing reasons, and because the amended complaint fails to state a cognizable claim against any other official from Elmira Correctional Facility for the reasons discussed more fully below, plaintiff's failure-to-protect claim arising out of wrongdoing that allegedly occurred at Elmira Correctional Facility (and the named defendant against whom this claim is asserted) is severed from this amended complaint and venue of the claim (and related defendant) is transferred to the Western District in the interests of justice and judicial efficiency. The Court makes no ruling as to the sufficiency of the failure-to-protect claim, thereby leaving that determination to the Western District of New York.

### D.  Analysis of Plaintiff's Remaining Claims

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

### 1.  Official Capacity Claims

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe*

*of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's amended complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

In addition, the Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

Accordingly, to the extent that plaintiff seeks monetary damages under Section 1983 against any defendant in his or her official capacity, such claims are dismissed with prejudice

pursuant to 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.[18]

### 2. Defendant Brian Fischer

The events giving rise to plaintiff's claims began in August, 2016. Publically available information on the DOCCS website makes clear that Brian Fischer retired as the Commissioner of DOCCS on April 30, 2013. *See* http://www.doccs.ny.gov/NewsRoom/external_news/2013-03-04_Fischer_Retirement_Letter. pdf (last visited Jan. 22, 2020).[19] Thus, there is no basis for the Court to plausibly infer that defendant Fischer was personally involved in any of the wrongdoing alleged in the amended complaint.

Accordingly, defendant Fischer, and all claims asserted against him, are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. First Amendment Free-Flow-of-Mail Claim

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the

---

[18] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities). In this case, plaintiff has not sought injunctive relief or alleged facts which plausibly suggest the existence of an ongoing violation of law or the Constitution. *See generally*, Am. Compl.

[19] Pursuant to Fed. R. Evid. 201, a court may at any stage of a proceeding take judicial notice of "a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." This includes "information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n. 8 (S.D.N.Y. 2006) (quoting prior version of Fed. R. Evid. 201(b) amended in 2011 as part of the restyling of the Evidence Rules). The accuracy and authenticity of DOCCS's website cannot reasonably be questioned.

First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). A prisoner's mail may only be restricted to further "'one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Id.* (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011) (dismissing access-to-the-courts claim for failure to allege injury, but holding that plaintiff adequately alleged a violation of his right to send and receive mail). "It is thus not necessary to allege actual injury when asserting a violation of one's right to the free flow of mail." *Antrobus v. City of New York*, No. 11-CV-2524, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014) (citations omitted).

As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, . . . an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted). However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional

16

rights must be "reasonably related to legitimate penological interests").

In this case, plaintiff alleges that on one occasion, defendant Corrections Officer John Doe refused to accept plaintiff's grievance for filing. Am. Compl. at 2. As an initial matter, inmates do not have a constitutional right to state grievance programs. *See Shell v. Brzeniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim."); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under Section 1983).

Furthermore, the amended complaint is devoid of any allegations which plausibly suggest that Corrections Officer John Doe's alleged refusal to accept plaintiff's grievance for filing on one occasion was part of an ongoing practice of censorship unjustified by a substantial government interest, or unjustifiably chilled plaintiff's right of access to the courts or impaired his legal representation. Moreover, the amended complaint lacks any allegations that Corrections Officer John Doe refused to deliver plaintiff's mail thereafter.

Accordingly, plaintiff's First Amendment free-flow-of-mail claim is dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Eighth Amendment Conditions-of-Confinement Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the

hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although it is clear that the Eighth Amendment "does not mandate comfortable prisons," it does not permit inhumane treatment of those in custody. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

"Prison officials are liable under the Eighth Amendment for harm incurred by an inmate if they act with deliberate indifference to the inmate's safety." *Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014). To satisfy the deliberate indifference standard, a plaintiff must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) "the defendant prison officials possessed sufficient culpable intent." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 834). The first prong is objective and requires that prison officials provide inmates with "basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 30, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199 (1989)). "The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry." *Hayes*, 84 F.3d at 620. In particular, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id*. As the Supreme Court has made clear, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### a. Annarino and Corrections Sergeant Burns

Liberally construed, the amended complaint asserts a conditions-of-confinement claim against defendants Annarino and Corrections Sergeant Burns based on allegations that they engaged in conduct that deprived him of recreation on four consecutive days, even though plaintiff had yet to receive his disciplinary hearing on the charges in the misbehavior report issued by defendant Annarino. *See* Am. Compl. at 3-4; Letter Request at 1-2. Setting aside the conclusory nature of plaintiff's allegations, it is well-settled that the denial of recreation for such a limited number of days is not sufficiently severe and prolonged to rise to the level of an Eighth Amendment violation. *See, e.g., Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996) (finding that keeping inmate on lockdown and "full restraint" status without outdoor exercise for a period of approximately twenty-two days was insufficient to satisfy the subjective prong and therefore does not violate the Eighth Amendment); *Dumpson v. Goord*, No. 00-CV-6039, 2011 WL 4345760, at *9 (W.D.N.Y. Sep. 15, 2011) (denial of recreation for two weeks "does not reach the level of an objectively unconstitutional deprivation of exercise"); *Houston v. Goord*, No. 9:03-CV-1412 (GTS/DEP), 2009 WL 890658, at *15 (N.D.N.Y. Mar. 31, 2009) (declaring Eighth Amendment claim without merit because denial of opportunity to exercise outdoors for less than two weeks was de minimis); *Barnes v. Craft*, No. 9:04-CV-1269 (NAM/GHL), 2008 WL 3884369, at *9 (N.D.N.Y. Aug. 18, 2008) (denial of outdoor exercise "for six days [was] simply not sufficiently severe and prolonged to rise to the level of an Eighth Amendment violation"); *Gibson v. City of N.Y.*, No. 96-CV-3409, 1998 WL 146688, at *3 (S.D.N.Y. Mar. 25, 1998) (finding the "deprivation of the opportunity to participate in recreation for eight days in a sixty day period, even when coupled with the

19

deprivation of an opportunity to exercise on two consecutive days" was not sufficiently serious); *Davidson v. Coughlin*, 968 F. Supp. 121, 131 (S.D.N.Y. 1997) (deprivation of outdoor exercise for fourteen days did not violate Eighth Amendment); *cf. Anderson v. Coughlin*, 757 F.2d 32, 36 (2d Cir. 1985) ("[A]n occasional day without exercise when weather conditions preclude outdoor activities . . . is not cruel and unusual punishment.").

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Annarino and Corrections Sergeant Burns are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Riley

Plaintiff separately asserts a conditions-of-confinement claim against defendant Riley based on allegations that he moved plaintiff from a cell with a desirable view to a cell with a more limited and depressing view, which adversely impacted plaintiff's mental state at Mid-State Correctional Facility.  Am. Compl. at 6-7; Letter Request at 1.

As an initial matter, plaintiff generally does not have a constitutional right to the cell of his choosing.  *See, e.g., White v. Williams*, 9:12-CV-1775 (NAM/RFT), 2014 WL 1672634, at *2 (N.D.N.Y. Apr. 28, 2014) ("[T]he law is clear that an inmate does not have a right to be confined to the prison of his own choosing or to a particular type of housing." (collecting cases)); *Cagle v. Gravlin*, No. 09-CV-0648 (FJS/GHL), 2010 WL 2088267, at *4 (N.D.N.Y. Apr. 29, 2010) ("I can find no case holding that a prisoner has a constitutional right either to the cell of his choice or to disobey a direct order."), *report and recommendation adopted by* 2010 WL 2087437 (N.D.N.Y. May 25, 2010); *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995) ("An inmate does not have a right to be placed in the cell of his choice.").  Moreover,

housing an inmate in a cell with an obstructed view of outdoor scenery "falls far short of the type of deprivation that would implicate a 'denial of the minimal civilized measure of life's necessities.'" *Taylor v. Halladay*, No. 9:09-CV-0385 (FJS/DEP), 2010 WL 3120036, at *7 (N.D.N.Y. July 1, 2010) (rejecting plaintiff's claim that his Eighth Amendment rights were violated when he was placed in a cell with a window covered up, which precluded his ability to look outside (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)), *report and recommendation adopted by* 2010 WL 3155730 (N.D.N.Y. Aug. 9, 2010); *see also Williams v. Adams*, 143 Fed. App'x 76 (9th Cir. 2005) (affirming summary judgment dismissing plaintiff's claim that frosted cell window deprived him of natural light and constituted an Eighth Amendment violation).

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Riley is dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Morgavero, Cantwell, Klein, and Hearing Officer Burns

Plaintiff asserts Eighth Amendment conditions-of-confinement claims against defendants Morgavero, Cantwell, Klein, and Hearing Officer Burns based on allegations that they wrongfully imposed excessive SHU sentences on him, in disregard of his mental health.

Generally speaking, confining an inmate in SHU, without more, and notwithstanding the restrictions that such confinement imposes on inmate life, does not constitute cruel and unusual punishment. *See Bowens v. Smith*, No. 9:11-CV-784, 2013 WL 103575, at *10 (N.D.N.Y. Jan. 8, 2013) ("Confinement in SHU, in itself, notwithstanding its additional restrictions on inmates, has not been held to constitute cruel and unusual punishment."),

21

*report and recommendation adopted by* 2013 WL 103596 (N.D.N.Y. Jan. 8, 2013); *Hamilton*

*v. Fisher*, No. 9:10-CV-1066 (MAD/RFT), 2012 WL 987374, at \*8 (N.D.N.Y. Feb. 29, 2012)

("'[N]ormal' conditions of SHU confinement do not constitute an Eighth Amendment

violation." (citations omitted)), *report and recommendation adopted by* 2012 WL 987122

(N.D.N.Y. Mar. 22, 2012). "However, courts are also cognizant that 'the deleterious effects of

isolated housing on inmates—especially to those assigned to long-term solitary

confinement—are well-known and amply documented,' including the fact that prolonged

solitary confinement 'can and does lead to significant psychological harm.'" *Smith v.*

*Annucci*, No. 18-CV-06261, 2019 WL 539935, at \*6 (W.D.N.Y. Feb. 11, 2019) (quoting

*Peoples v. Annucci*, 180 F. Supp. 3d 294, 299 (S.D.N.Y. 2016)). "Accordingly, courts have

found Eighth Amendment violations where inmates are held in solitary confinement for

extended periods of time, such that the effects are 'grossly disproportionate' to the reasons

for the isolation." *Smith*, 2019 WL 539935, at \*6 (citing, *inter alia*, *Peoples v. Fischer*, 898 F.

Supp. 2d 618, 621 (S.D.N.Y. 2012)).

As an initial matter, the allegations in the amended complaint make clear that the

entirety of plaintiff's SHU confinement was disciplinary. *See generally*, Am. Compl.[20]

Furthermore, plaintiff appears to accept guilt for multiple charges related to assaulting other

inmates and staff, and engaging in lewd acts in front of staff. *See* Am. Compl. at 8, 12, 21,

25-26, 30-31, 36-38. Thus, this case is not analogous to those in which inmates have

challenged their administrative SHU confinement after the completion of their disciplinary

sentences as excessive. Rather, it appears to be plaintiff's claim that, after a certain

---

[20] Part 301 of the New York Code, Rules and Regulations lists the grounds for special housing unit admissions, which include disciplinary, detention, administrative segregation, and protective custody.

unidentified period of time, imposing SHU confinement for disciplinary infractions constituted cruel and unusual punishment, regardless of the nature of his own actions that resulted in the SHU sentences. While the Court declines to blanketly accept such a nebulous contention, a further discussion is necessary to explain why the allegations in the amended complaint are insufficient to state an Eighth Amendment claim with respect to any of the imposed SHU sentences.

### (i) 2016 SHU Sentences

With respect to plaintiff's initial SHU confinement, plaintiff alleges that in August, 2016, he began serving a six month SHU sentence while at Auburn Correctional Facility for "disobeying the direct orders of an officer" and "squeez[ing] the contents [of a lotion bottle]" on that officer. Am. Compl. at 9, 18-19. Plaintiff further alleges that before the expiration of this initial SHU confinement period, he received additional disciplinary charges while at Southport Correctional Facility, which resulted in one or more sentences of additional SHU confinement that continued until April, 2017, when he was transferred to Elmira Correctional Facility and placed on keeplock status, apparently to conclude the disciplinary sentence he received at Southport Correctional Facility. Am. Compl. at 20-21.[21]

The amended complaint is devoid of any allegations explaining the nature of the disciplinary charges that resulted in plaintiff's initial SHU confinement beyond six months. Furthermore, the amended complaint lacks any allegations which plausibly suggest that any of the hearing officers who imposed disciplinary sentences that resulted in plaintiff's SHU confinement between August, 2016 and April, 2017, were aware that plaintiff was suffering

---

[21] By plaintiff's own allegations, he was released from SHU and confined to his cell on keeplock status for twenty-seven days while housed at Elmira Correctional Facility. Am. Compl. at 12, 20.

from any mental health problems likely to be impacted by SHU confinement.  Indeed, plaintiff does not even allege that he was suffering from mental health problems during this time. Thus, there is no basis for the Court to plausibly infer that plaintiff's SHU confinement between August, 2016 and April, 2017, was grossly disproportionate to the charged violations and/or imposed out of deliberate indifference to a significant risk to plaintiff's well-being.

### (ii)  SHU Sentence in May 2017

Plaintiff alleges that three days before the conclusion of the disciplinary sentences imposed in 2016, he was placed in SHU for six months after he was found guilty of being involved in an altercation with another inmate.  *See* Am. Compl. at 12, 20-21.  Plaintiff does not deny his involvement in the altercation, and in fact alleges that he cut the inmate he fought with a weapon.  *Id.* at 26-27.  In addition, the amended complaint lacks any allegations which plausibly suggest that the hearing officer who imposed this disciplinary sentence did so despite knowing that plaintiff was suffering from mental health problems likely to be impacted by SHU confinement.  Thus, there is no basis to plausibly infer that the disciplinary sentence of SHU confinement imposed following plaintiff's placement on keeplock status was grossly disproportionate to the charged violation and/or issued out of deliberate indifference to a significant risk to plaintiff's well-being.

### (iii)  SHU Sentences After May 2017

Plaintiff alleges that he received at least fifteen disciplinary charges between June, 2017 and July, 2019, including charges for assaulting other inmates and a corrections official.  Am. Compl. at 3-5, 7-8, 12-13, 30-31, 36-38.  The amended complaint lacks any

allegations indicating the amount of SHU confinement imposed on plaintiff for any of the disciplinary sentences he received between June, 2017 and February, 2019, and contains virtually no details regarding plaintiff's conduct giving rise to these charges.  In addition, although plaintiff alleges that he was sentenced to 30 days of SHU confinement at his most recent disciplinary hearing in July, 2019, the amended complaint does not contain any allegations which plausibly suggest that the hearing officer, defendant Klein, or any of the other hearing officers who imposed disciplinary sentences after May, 2017, were aware, before sentencing plaintiff, either of how much time he had already spent in SHU, or how much additional SHU time he was already facing as a result of prior disciplinary sentences. Nor does the amended complaint contain any allegations which plausibly suggest that any of the hearing officers who sentenced plaintiff to SHU confinement between June, 2017 and July, 2019 were aware that he was suffering from a mental illness impacted by SHU confinement.

Moreover, pursuant to 7 NYCRR § 254.6(b), a hearing officer presiding over a disciplinary hearing is required to "consider evidence regarding the inmate's mental condition . . . at the time of the incident and at the time of the hearing" when the inmate's mental state is "at issue."  The regulation expressly states that an inmate's mental state is "at issue" when

> (i) the inmate is classified as level 1 by the Office of Mental Health (OMH), as indicated on the hearing record sheet; (ii) the inmate is designated as an "S" by OMH, as indicated on the hearing record sheet; (iii) the inmate is charged with engaging in an act of self-harm in violation of rule 123.10 (section 270.2(B)(23)(i) of this Title), as indicated on the misbehavior report; (iv) the incident occurred while the inmate was being transported to or from the Central New York Psychiatric Center (CNYPC), as alleged in the misbehavior report; (v) the inmate was an inpatient at the CNYPC within nine months prior to the incident, as indicated on the hearing record sheet; (vi) the incident occurred while the inmate was assigned to an OMH satellite unit, or intermediate care program, as indicated on the hearing

25

record sheet; (vii) the incident occurred while the inmate was being escorted to or from an OMH satellite unit or intermediate care program, as alleged in the misbehavior report; (viii) the hearing was delayed or adjourned, after an extension of time was obtained in accordance with section 251-5.1 of this Title, because the inmate became an inpatient at the CNYPC or was assigned to the OMH satellite unit; or (ix) it appears to the hearing officer, based on the inmate's testimony, demeanor, the circumstances of the alleged offense or any other reason, that the inmate may have been mentally impaired at the time of the incident or may be mentally impaired at the time of the hearing.

7 NYCRR § 254.6(b)(1)(i)-(ix).

When an inmate's mental state is "at issue," the hearing officer is required to undertake steps to ensure that the inmate understands the disciplinary charge(s), the purpose of the hearing, and the role of the participants in the hearing, and evaluate the inmate's mental condition at the time of the incident and the hearing. 7 NYCRR § 254.6(c). In addition, if it is determined that the inmate whose mental state is "at issue" is "capable of proceeding with the hearing[,] and a finding of guilt is subsequently made with regard to one or more of the charges," the hearing officer is required to "consider the inmate's mental condition . . . at the time of the incident . . . in determining the appropriate penalty to be imposed[,]" and may dismiss the charge(s) altogether if the officer believes that a penalty would "serve no useful purpose[.]" 7 NYCRR § 254.6(f). When the inmate's mental state is "at issue," the written disposition of the charges must also "reflect how the inmate's mental condition . . . was considered." *Id.*

Thus, even if the Court were to assume that each hearing officer who presided over plaintiff's disciplinary hearings in and after June, 2017, was aware that plaintiff was suffering

from a mental health issue at the time of the disciplinary event or hearing,[22] the amended complaint fails to allege facts which plausibly suggest that plaintiff's mental health was not taken into consideration by any of these hearing officers when his disciplinary sentences were imposed.  For example, plaintiff does not allege that any hearing officer failed to investigate his mental condition at the time of the charged infraction or hearing, or advise him in the written disposition how his mental health was considered.  Nor does plaintiff allege that any medical professional recommended against a disciplinary sentence of SHU confinement, which was nonetheless imposed by one or more hearing officers.[23]  Plaintiff also does not allege that he appealed any of the disciplinary sentences that included SHU confinement.

In other words, the Court has no basis to plausibly infer from the allegations in the amended complaint, or documents attached to the original complaint, that any hearing officer imposed a disciplinary sentence of SHU confinement on plaintiff in deliberate disregard to his mental condition, and the impact SHU confinement might have on him.  There is also no basis to infer from the allegations in the amended complaint that any of the imposed sentences of SHU confinement were grossly disproportionate to the charged misconduct.

For all of these reasons, plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Morgavero, Cantwell, Klein, and Hearing Officer Burns are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

---

[22]  Plaintiff conclusorily alleges that by June, 2018, it became apparent that he was suffering from mental health issues impacted by his SHU confinement.  *See* Am. Compl. at 15.

[23]  Plaintiff attached documents to the original complaint showing that between July, 2018, and March, 2019, he received a mental health examination by a medical professional roughly once a month.  *See* Dkt. No. 1-1 at 37-48.

### d. Annucci

Insofar as plaintiff has asserted a conditions-of-confinement claim against defendant Annucci for allegedly failing to take steps to either shorten plaintiff's period of SHU confinement due to his mental health condition(s), or prevent plaintiff from suffering an indefinite period of SHU confinement, his claim must be dismissed because the amended complaint fails to adequately plead that plaintiff's placement in SHU at any point violated his Eighth Amendment rights. *See Toole v. Connell*, No. 9:04-CV-0724 (LEK/DEP), 2008 WL 4186334, at *7 (N.D.N.Y. Sep. 10, 2008) (Peebles, M.J.), *report and recommendation adopted by* 2008 WL 4186334, at *1 (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under section 1983); *see also Linares v. Mahunik,* No. 9:05-CV-625 (GLS/RJT), 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006), *report and recommendation adopted by* 2006 WL 2595200, at *1 (plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation"); *Johnson v. McClure*, No. 9:06-CV-0431 (GTS/DEP), 2009 WL 2356147, at *20 (N.D.N.Y. May 11, 2009) ("Rather than providing an independent basis for a cause of action, supervisory liability on the part of any of the defendants is more appropriately considered in the context of each of the substantive constitutional claims raised in the case. Since I have recommended dismissal of each of those claims, there is therefore no basis to find supervisory liability in connection with any of them."), *report and recommendation adopted by* 2009 WL 2356147, at *1-3 (N.D.N.Y. July

28, 2009).[24]

Furthermore, even if plaintiff had alleged sufficient facts to plausibly suggest that one or more of his SHU sentences was cruel and unusual, the amended complaint lacks any allegations which plausibly suggest that procedural safeguards were not implemented or followed to ensure that plaintiff was not forced to remain confined in SHU despite a significant risk to his mental health. To the contrary, by plaintiff's own allegations, he was in "phase 2" of a "Step-Down Program" in September, 2019, and on track to be released from SHU in less than nine months, despite disciplinary determinations that were supposed to keep him in SHU through at least March, 2023. Am. Compl. at 40.

In addition, plaintiff alleges that he was transferred to Clinton Correctional Facility on August 31, 2018, for better mental health treatment. Am. Compl. at 21, 31. Thereafter, he was transferred to Attica Correctional Facility and then Mid-State Correctional Facility before his transfer out of state to the Baltimore County Detention Facility. Publically available information on the New York State Office of Mental Health's website makes clear that each of these facilities is a level 1 facility. *See*

---

[24] Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). For purposes of this Decision and Order, the Court assumes that all five categories under *Colon* remain valid.

https://www.omh.ny.gov/omhweb/facilities/cnpc/satellite.pdf (last visited Jan. 22, 2020).[25]

Pursuant to 7 NYCRR § 310.1, each correctional facility designated as level 1 by the Office of Mental Health ("OMH") must set up "a committee to be known as the special housing unit case management committee[,]" which must be "co-chaired by the first deputy superintendent or deputy superintendent for security or designee and the unit chief or clinical director of the OMH mental health satellite unit or designee."  Each co-chairperson must also select at least two individuals to sit as additional committee members from among a select list, and "[i]f the OMH co-chairperson is not a clinician[,] at least one of the additional individuals selected to sit on the committee shall be an OMH clinician."  *Id.*  Pursuant to 7 NYCRR § 310.2, the special housing unit case management committee is assigned to

> review, monitor and coordinate the behavior and treatment plan for those inmates assigned to SHU in a correctional facility designated as level 1 by OMH who are on the OMH mental health caseload and other SHU inmates based upon a recent request to the committee from OMH or department staff, and to initially review the status of all inmates newly assigned to SHU in a correctional facility designated as level 1 by OMH following a superintendent's hearing in which the inmate's mental state . . . was deemed to be at issue[.]

After reviewing the inmate's status, which includes discussing the inmate's disciplinary and criminal history, mental health diagnoses, and treatment needs, the committee may, among other things, "recommend to the superintendent the temporary or permanent restoration of one or more privileges, the suspension or reduction of confinement time, or a housing reassignment."  7 NYCRR § 310.2(c), (d)(1).

Thus, assuming plaintiff's mental condition was "at issue" during any of his disciplinary hearings after August 31, 2018, or that he was on the OMH mental health caseload, at least

---

[25]  The accuracy and authenticity of OMH's website cannot reasonably be questioned.

one medical professional from the special housing unit case management committee was supposed to evaluate the medical effects, if any, of plaintiff's continued SHU confinement.[26] Moreover, it is clear from the documents attached to the original complaint that plaintiff received mental health evaluations throughout 2018 and 2019. *See* Am. Compl. at 14, 21, 29, 32; Dkt. No. 1-1 at 2-48.

Simply put, if plaintiff's mental condition might have warranted reducing or ending his SHU confinement, it appears procedures were in place for this to occur, and plaintiff has not alleged otherwise. The Court therefore has no basis to plausibly infer that defendant Annucci failed to take the necessary steps to ensure that plaintiff was not indefinitely confined to SHU, or confined to SHU despite a release being medically necessary.

For all of these reasons, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Annucci is dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

---

[26] Plaintiff was evaluated by OMH professionals several times throughout 2018. *See* Dkt. No. 1-1 at 2-48. In addition, as noted, between July, 2018, and March, 2019, plaintiff received a mental health examination by a medical professional roughly once a month. *Id.* at 37-48. Thus, if plaintiff was never evaluated by a special housing unit case management committee, it appears that would be because of a determination by one or more OMH professionals that he was not suffering from a condition that (1) placed his mental health "at issue" during any of his disciplinary hearings, or (2) warranted placement on the OMH mental health caseload. A non-medical professional's deference to such a determination does not give rise to a cognizable Eighth Amendment claim against that official. *See Sharma v. D'Silva*, 157 F. Supp. 3d 293, 305 (S.D.N.Y. Jan. 25, 2016) ("As a non-medical official, Defendant Annucci was not in a position to critically evaluate the quality of Plaintiff's medical treatment nor was he required to engage in a deep-dive investigation of the exact nature of Plaintiff's medical ailments. The Court finds that Defendant Annucci's course of action does not establish that he acted with deliberate indifference towards Plaintiff and dismisses Plaintiff's claim against Defendant Annucci."); *Gonzales v. Wright*, 9:06-CV-1424, 2010 WL 681323, at *10 (N.D.N.Y. Feb. 23, 2010) ("The Superintendent's and Deputy Superintendent's delegation of medical judgment to appropriate staff was proper as the Second Circuit has cautioned that non-medical Defendants should not intercede in the medical care and treatment of an inmate." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 111(2d Cir. 2000) ("One can imagine the repercussions if non-medical prison officials were to attempt to dictate the specific medical treatment to be given particular prisoners...."))·

### 5. Fourteenth Amendment Due Process Claims

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)).  Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995).  The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. Although the Second Circuit has declined to provide a bright-line rule as to what duration of punitive confinement implicates a prisoner's constitutional rights, SHU confinement for more than 305 days rises to the level of atypicality. *See Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*.").

### a. Annarino and Corrections Sergeant Burns

As noted, the amended complaint alleges that defendants Annarino and Corrections Sergeant Burns engaged in conduct that denied plaintiff recreation on four consecutive days, even though plaintiff had yet to have his disciplinary hearing on the charges in the

misbehavior report issued by defendant Annarino. *See* Am. Compl. at 3-4; Letter Request at 1-2.

It is well-settled that a brief deprivation of recreation privileges, such as that alleged here, does not constitute an atypical and significant hardship implicating a protected liberty interest. *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (twenty-one days in pre-hearing keeplock not an atypical hardship); *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (eighteen days of administrative confinement and exercise deprivation not an atypical hardship); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (twelve days in pre-hearing confinement not an atypical or significant hardship); *Latona v. Chautauqua Cty. Jail*, No. 97-CV-0661, 2004 WL 2457797, at *5 (W.D.N.Y. Nov. 2, 2004) (finding that "the 17-day keeplock status and denial of recreation did not create an atypical or significant hardship in relation to the ordinary incidents of prison life [and] [t]hus, the plaintiff . . . may not maintain the due process claims asserted in this matter"); *Wells v. Wade*, 36 F. Supp. 2d 154, 158 (S.D.N.Y. 1999) ("Wells's thirteen days of keeplock confinement was less severe than that of the inmate in Sandin both in duration and condition. At his deposition, Wells complained that during his thirteen days of confinement he could not enjoy the same opportunities for recreation normally available to inmates in dormitory housing, including viewing television, cooking, and playing games. . . . Absent any allegation of unusual conditions, denial of such privileges for less than two weeks does not implicate a liberty interest and is not actionable under § 1983."); *Ragland v. Crawford*, No. 95-CV-10069, 1997 WL 53279, *3 (S.D.N.Y. Feb. 7, 1997) ("In light of the Court's holding in *Sandin*, neither Ragland's loss of one hour daily recreation time for one week, nor his alleged confinement to keeplock on October 13, 1995,

constitutes an atypical, significant hardship implicating a protected liberty interest.").

Accordingly, plaintiff's Fourteenth Amendment due process claims against defendants Annarino and Corrections Sergeant Burns are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[27]

### b. Diego, Loomis, Martin, Strajack, Fischer, "Ms. C" and "Ms. A"

The amended complaint alleges that in September, 2019, defendants Diego, Loomis, Martin, Strajack, Fischer, "Ms. C" and "Ms. A." delayed plaintiff's "progress into Phase 3 [of the] Step Down Program" by one week, and as a result, plaintiff's SHU confinement and lack of access to commissary buy privileges was extended by one week. *Id.* at 6.

As an initial matter, the amended complaint is devoid of any allegations explaining why plaintiff's progression into "Phase 3" of the "Step-Down Program" was delayed, or if plaintiff was given notice and an opportunity to be heard prior to the alleged delay. Plaintiff also does not explain how or when he was admitted into the program, or under what terms. Thus, the Court has no basis to plausibly infer that the alleged delay was wrongful in any respect. Moreover, it does not appear that plaintiff has a protected liberty interest in participating in the "Step-Down Program," which is apparently a program designed to facilitate plaintiff's early release from SHU confinement. *See Nieves v. Prack*, No. 15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. Mar. 24, 2016) ("[Plaintiff's] claim that his

---

[27] Defendant Annarino's alleged issuance of a false misbehavior report also does not, without more, give rise to a cognizable Section 1983 claim. *See Freeman v. Rideout*, 808 F.2d 949, 950, 953 (2d Cir. 1986) ("[T]he filing of unfounded charges is not *per se* a constitutional violation under section 1983[.]"); *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate . . . violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, . . . , or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights . . . ." (internal citations omitted)).

inability . . . to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is . . . speculative and fails to allege interference with a protected liberty interest.") (citations omitted); *Thompson v. LaClair*, No. 08-CV-0037 (FJS/DEP), 2009 WL 2762164, at *5 (N.D.N.Y. Jan. 30, 2009) ("Courts considering inmate claims regarding [the] denial of participation in or access to prison programs or privileges under *Sandin* have uniformly concluded that inmates do not enjoy a protected liberty interest in such aspects of prison life."), *report and recommendation adopted by* 2009 WL 2762164 (N.D.N.Y. Aug. 25, 2009). In any event, and even assuming that the State has granted plaintiff a liberty interest in participating in the "Step-Down Program," such a brief denial of plaintiff's progression through the program, which allegedly only had the effect of prolonging his SHU confinement and lack of access to commissary buy privileges by one week, did not impose an "atypical and significant hardship" on plaintiff. *Shariff v. Artuz*, No. 99-CV-0321, 2000 WL 1219381, at *6 (S.D.N.Y. Aug. 28, 2000) (concluding that, even assuming "the State has granted inmates, by regulation or statute, a protected liberty interest . . . in participating in Honor Block, it is clear that the mere denial of the extra privileges associated with Honor Block does not impose an 'atypical and significant hardship' on plaintiffs").

Accordingly, plaintiff's Fourteenth Amendment due process claims against defendants Diego, Loomis, Martin, Strajack, Fischer, "Ms. C" and "Ms. A" are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Morgavero, Cantwell, Klein, and Hearing Officer Burns

Liberally construed, the amended complaint alleges that defendants Morgavero,

Cantwell, Klein, and Hearing Officer Burns denied plaintiff due process during his disciplinary hearings before them.  For purposes of this Decision and Order only, the Court assumes that plaintiff had a protected liberty interest in remaining free from the SHU confinement that resulted from each of the disciplinary sentences imposed by these defendants.  Even with that assumption, plaintiff has failed to allege facts which plausibly suggest that any of hearing officers named as defendants denied him the process to which he was entitled during any of his disciplinary hearings.

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination.  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia*, *Wolff v. McDonnell*, 418 U.S. 539, 563- 67 (1974)).  The hearing officer's findings must be supported by "some" "reliable evidence."  *Id.* (citing, *inter alia*, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

With respect to defendants Morgavero, Cantwell, and Hearing Officer Burns, the amended complaint is devoid of any allegations regarding plaintiff's disciplinary hearings before them.  Instead, plaintiff simply alleges that these defendants presided over disciplinary hearings that resulted in sentences of SHU confinement.  *See* Am. Compl. at 7-12, 14, 21, 37.  Thus, plaintiff has failed to allege sufficient facts to plausibly suggest that any of these hearing officers denied him the process to which he was entitled during one or more of his disciplinary hearings before them.

Furthermore, with respect to defendant Klein, plaintiff alleges only that this defendant

refused to allow him to call any witnesses to rebut defendant Annarino's testimony that plaintiff directed inappropriate language at her from his cell, which was the basis for the misbehavior report she authored.  Am. Compl. at 3-5.

It is well-settled that an inmate's due process right to call witnesses "is not unfettered." *Allen v. Graham*, No. 9:16-CV-47 (GTS/ATB), 2017 WL 9511168, at *15 (N.D.N.Y. Sept. 26, 2017) (citing *Alicea v. Howell*, 387 F. Supp. 2d 227, 234 (W.D.N.Y. 2005) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985))), *report and recommendation adopted by* 2017 WL 5957742 (N.D.N.Y. Dec. 1, 2017).  Rather, it "may be limited for security reasons, to keep a hearing within reasonable limits, or on the basis of irrelevance or lack of necessity." *Id*. (citing *Alicea*, 387 F. Supp. 2d at 234).  "An inmate's due process right to witnesses is only violated when a prison hearing officer refuses to interview witnesses without assigning a reason 'logically related to preventing undue hazards to 'institutional safety or correctional goals.'" *Id*. (quoting *Ponte*, 471 U.S. at 497).

While plaintiff alleges that he sought to call his "neighbors or the state actors known to walk the area of the incident" to rebut defendant Annarino's testimony, he fails to allege that any of these individuals actually witnessed the events giving rise to the misbehavior report. In addition, based on plaintiff's allegations that he challenged the credibility of defendant Annarino's testimony, and stated his innocence to defendant Klein, *see* Am. Compl. at 4-5, it appears that plaintiff sought to call these witnesses only to further corroborate his version of the events.  It is well-settled that "[t]he refusal to call witnesses whose testimony would be redundant is not a violation of any established due process right." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014); *see also Russell v. Selsky*, 35 F.3d 55, 58-59 (2d Cir. 1994)

(prison official "did not violate any clearly established constitutional or statutory right" when he refused to permit inmate's requested witnesses to testify where the witnesses' testimony would have been "duplicative or non-probative"); *Garrett v. Ask-Carlson*, No. 15-CV-0723, 2016 WL 439029, at *4 (S.D.N.Y. Feb. 3, 2016) ("The complaint alleges that inmate Brito witnessed Rodriguez refuse to permit Garrett witness the sealing of his urine sample. If called to testify, the Court assumes Brito would have corroborated Garrett's account. But such corroboration would be merely duplicative of Garrett's own testimony, and thus the hearing officer permissibly exercised his discretion to refuse to call the witness.").

Furthermore, the amended complaint lacks any allegations which plausibly suggest that defendant Klein denied plaintiff's request without assigning a justifiable reason.  In addition, there is no basis for the Court to plausibly infer from the allegations in the amended complaint that defendant Klein's determination of guilt was not based on some credible evidence.  *See Hinton v. Prack*, 9:12-CV-1844 (LEK/RFT), 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) ("some evidence" standard satisfied where the misbehavior report was made by the officer personally involved in the incident and was based upon his first hand observation and detailed account of the incident); *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (same).  Thus, plaintiff has failed to allege sufficient facts to plausibly suggest that defendant Klein denied him the process to which he was entitled during his disciplinary hearing in July, 2019.

Accordingly, plaintiff's Fourteenth Amendment due process claims against defendants Morgavero, Cantwell, Klein, and Hearing Officer Burns are dismissed pursuant to 28 U.S.C. §

1915A(b) for failure to state a claim upon which relief may be granted.[28]

### E.    Dismissal with Leave to Amend

Based on the foregoing, plaintiff's amended complaint is dismissed under 28 U.S.C. § 1915A(b).  Although plaintiff was already given an opportunity to amend his complaint and it does not appear that plaintiff will be able to state a cognizable claim against the named defendants, in light of his pro se status, the Court will afford plaintiff a final opportunity to file a proper amended complaint with respect to the claims that were not dismissed with prejudice or transferred.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

Any amended complaint filed by plaintiff must bear his original signature, and must be a complete pleading which will supersede and replace the original complaint in its entirety. Plaintiff must name one or more defendants, and must set forth a short and plain statement of the facts he relies on in support of his claim that the individual named as a defendant engaged in misconduct or wrongdoing that violated plaintiff's constitutional rights.

Plaintiff is forewarned that, if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

---

[28]  Plaintiff also cannot state a Fourteenth Amendment substantive due process claim against these defendants based on allegations that they wrongfully imposed disciplinary sentences that included SHU confinement because such allegations are more properly analyzed under the Eighth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274-75 (1994) (where a specific amendment provides protection against a particular government action, claims must be brought pursuant to that amendment rather than as a violation of substantive due process under the Fourteenth Amendment); *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) ("[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process.").

III.     **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the Clerk is directed to attach a copy of the exhibits to the original

complaint (Dkt. No. 1-1; Dkt. No. 6-1) to the amended complaint; and it is further

**ORDERED** that the Clerk is directed to revise the docket to add the following

individuals as defendants: (1) Corrections Officer John Doe, Auburn Correctional Facility; (2)

Corrections Lieutenant Klein, Mid-State Correctional Facility; (3) Corrections Officer Riley,

Mid-State Correctional Facility; (4) Corrections Sergeant Burns, Mid-State Correctional

Facility; (5) Hearing Officer Morgavero, Auburn Correctional Facility; (6) Hearing Officer

Burns, Attica Correctional Facility; (7) Hearing Officer Cantwell, Upstate Correctional Facility;

(8) Corrections Officer Annarino, Mid-State Correctional Facility; (9) Diego, Step Down

Program Counselor; (10) Loomis, Step Down Program Counselor; (11) Martin, Step Down

Program Counselor; (12) Strajack, Step Down Program Counselor; (13) Fischer, Step Down

Program Counselor; (14) "Ms. C", Step Down Program Counselor; and (15) "Ms. A", Step

Down Program Counselor; and it is further

**ORDERED** that the claim(s) arising out of plaintiff's confinement at Elmira Correctional

Facility asserted against defendant Corrections Sergeant John Doe are severed and

transferred to the Western District of New York; and it is further

**ORDERED** that the Clerk shall advise the Clerk of the Western District of New York, in

writing, of the entry of this Order and provide that Clerk with a certified copy of this Order and

of the docket sheet for this action, together with all information necessary for the Western

District Clerk to electronically access the documents filed in this action; and it is further

**ORDERED** that the Clerk shall remove Corrections Sergeant John Doe from the docket as a defendant in the Northern District action; and it is further

**ORDERED** that plaintiff's Letter Request (Dkt. No. 13) is **GRANTED** to the extent that plaintiff seeks to name Hearing Officer Mogavero, Corrections Officer Riley, and Corrections Sergeant Burns as defendants and **DENIED** in all other respects; and it is further

**ORDERED** that plaintiff's official capacity claims against each of the named defendants, as well as his individual capacity claims against former DOCCS Commissioner Brian Fischer, are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. The Clerk is directed to terminate former DOCCS Commissioner Brian Fischer as a defendant; and it is further

**ORDERED** that the remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action, he must file an amended complaint as directed above within thirty (30) days from the filing date of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case; and

it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: January 23, 2020
      Albany, NY

Lawrence E. Kahn
U.S. District Judge